**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CHRISTIAN GAGNON,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-5803** |
| | : | |
| **OFFICER MARQUEZ,** *et al.*, | : | |
| **Defendants.** | : | |

<u>**MEMORANDUM**</u>

**COSTELLO, J.**                                         **DECEMBER    4   , 2024**

      Plaintiff Christian Gagnon, who is currently incarcerated at SCI Coal Township, brings this *pro se* action alleging violations of his civil rights.  Gagnon seeks to proceed *in forma pauperis*.  For the following reasons, the Court will grant Gagnon *in forma pauperis* status and dismiss his Complaint.

**I.     FACTUAL ALLEGATIONS**[1]

      Gagnon asserts that he is currently being detained as a "parolee technical violator (alleged)." (Compl. at 4.)  He claims that his rights were violated by Officer Marquez of the Bensalem Police Department on April 5, 2024, in the parking lot of the Knights Inn in Bensalem. (*Id.*)  As alleged, Gagnon rented a room with his girlfriend because they were tired from trying to find a psychiatric hospital where he could seek treatment after a suicide attempt.  (*Id.* at 5.)  They planned to go to "the Horsham Clinic" after his girlfriend finished showering.  (*Id.*)  Gagnon claims that he had notified his "parole agent" and did not receive a response.  (*Id.*)  Gagnon did not realize that a warrant had been issued for his arrest.  (*Id.*)

---

[1] The factual allegations set forth in this Memorandum are taken from Gagnon's Complaint (ECF No. 1).  The Court adopts the sequential pagination supplied by the CM/ECF docketing system.

Gagnon asserts that when he left the hotel room and sat in the passenger seat of his car to make a call, Officer Marquez opened the door to arrest him, apparently pursuant to the parole warrant.  (*Id.*)  Officer Marquez told Gagnon that he "ran [his] tag."  (*Id.*)  Gagnon contends that this was an invasion of his privacy because it was done without probable cause and "[t]here was no breach of peace and he didn't have a warrant to run my tag for no reason.  A vehicle is an extension of a person's home."  (*Id.*)

Gagnon avers that he suffered mental, emotional, and physical harm as a result because he was incarcerated and did not receive the help he needed.  (*Id.*)  He seeks injunctive relief as well as monetary damages.  (*Id.*)

## II.    STANDARD OF REVIEW

The Court will grant Gagnon leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[2]  Accordingly, 28 U.S.C. § 1915(e)(2)(B) requires the Court to dismiss the Complaint if, among other things, it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).  At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* complaint as true, draw all reasonable inferences in the plaintiff's favor, and ask only whether the complaint contains facts sufficient to state a plausible claim.  *See Shorter v.*

---

[2] However, since Gagnon is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act.  *See* 28 U.S.C. § 1915(b).

*United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Gagnon is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).  The Court will "apply the relevant legal principle even when the complaint has failed to name it."  *Id.*  However, "'pro se litigants still must allege sufficient facts in their complaints to support a claim.'"  *Id.* (quoting *Mala*, 704 F. 3d at 245).  An unrepresented litigant "cannot flout procedural rules — they must abide by the same rules that apply to all other litigants."  *Id.*; *see also Doe v. Allegheny Cnty. Hous. Auth.*, No. 23-1105, 2024 WL 379959, at *3 (3d Cir. Feb. 1, 2024) ("While a court must liberally construe the allegations and 'apply the applicable law, irrespective of whether the pro se litigant mentioned it be name,' *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002), this does not require the court to act as an advocate to identify any possible claim that the facts alleged could potentially support.").

## III.    DISCUSSION

Gagnon presents claims under 42 U.S.C. § 1983 pursuant to the Court's federal question jurisdiction.  (*See* Compl. at 3.)  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  Furthermore, to state a § 1983 claim against a municipality, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694

(1978).  Gagnon alleges that his Fourth Amendment rights were violated when Officer Marquez

ran his license plate.[3]  As explained below, Gagnon's claims are not plausible.

A.    **Individual Capacity Claims**

Gagnon's assertion that Defendant Marquez needed probable cause to run his license

plate is not supported by caselaw.  The Fourth Amendment provides that "[t]he right of the

people to be secure in their persons . . . against unreasonable searches and seizures, shall not be

violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation,

and particularly describing the place to be searched, and the persons or things to be seized."  U.S.

Const. amend. IV.  As indicated by this language, "the underlying command of the Fourth

Amendment is always that searches and seizures be reasonable."  *New Jersey v. T.L.O.*, 469 U.S.

325, 337 (1985).  Nevertheless, "what is reasonable depends on the context within which a

search takes place."  *Id.*  The elements of a § 1983 claim for unreasonable search and seizure are:

(1) the actions of the police officers constituted a search or seizure within the meaning of the

Fourth Amendment; and (2) the actions were unreasonable in light of the surrounding

circumstances.  *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597-99 (1989).  Although searches

generally require probable cause or, at least, reasonable suspicion, there are exceptions including

one that permits an arresting officer to perform a search incident to an arrest.  *See generally*

---

[3] Gagnon also makes a passing reference to the Fifth and Fourteenth Amendment Due Process clauses, as well as the Eighth Amendment's prohibition on cruel and unusual punishment.  (See Compl. at 3.)  Such passing references are not sufficient to raise claims under these principles. *See Campbell v. LVNV Finding, LLC and Resurgent Capital Servs.*, No. 21-5388, 2022 WL 6172286, at *7 (E.D. Pa. Oct. 7, 2022) (A "'passing reference' to jurisprudential precepts without more does not bring that issue before the Court in that it provides no basis for a ruling one way or the other.") (citing *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994)); *Alexis v. Sessions*, No. 18-2099, 2018 WL 5077899, at *2 n.1 (D.N.J. Oct. 18, 2018).  Further, the Complaint does not provide any factual basis for claims under these concepts, so the Court will not discuss any such claims further.

*Birchfield v. North Dakota*, 579 U.S. 438, 455-61 (2016) (discussing the search-incident-to-arrest doctrine).

Gagnon presumes that a search occurred when Officer Marquez ran his license plate tag. A "search" under the Fourth Amendment occurs where a defendant has a subjective expectation of privacy "that society is prepared to recognize as reasonable." *Smith v. Maryland*, 442 U.S. 735, 740 (1979). With respect to vehicle information, the Supreme Court has specifically stated that "[t]he exterior of a car, of course, is thrust into the public eye, and thus to examine it does not constitute a 'search.'" *New York v. Class*, 475 U.S. 106, 114 (1986). It follows then that there is no reasonable expectation of privacy in the information on license plates. *United States v. Diaz-Castaneda*, 494 F.3d 1146, 1151 (9th Cir. 2007) ("[P]eople do not have a subjective expectation of privacy in their license plates, and . . . even if they did, this expectation would not be one that society is prepared to recognize as reasonable."); *United States v. Ellison*, 462 F.3d 557, 561 (6th Cir. 2006) ("[A] motorist has no reasonable expectation of privacy in the information contained on his license plate under the Fourth Amendment."); *United States v. King*, No. 07-89 2007 WL 4233585, at *4 (D. Del. Nov. 29, 2007) ("There is no reasonable expectation of privacy in a license plate number . . . displayed in plain view. . . . "). Indeed, "[n]o argument can be made that a motorist seeks to keep the information on his license plate private. The very purpose of a license plate number . . . is to provide identifying information to law enforcement and others." *Ellison*, 462 F.3d at 561-62.

Thus, courts have recognized that a law enforcement officer who "runs" a license plate does not implicate the Fourth Amendment. *See, e.g, Albert v. Schwartz*, 173 F. App'x 106, 107-08 (3d Cir. 2006) (*per curiam*) (affirming district court's conclusion that running a license plate number and checking criminal history does not constitute an invasion of privacy subject to

constitutional protection) (citing *Katz v. United States*, 389 U.S. 347, 351 (1967)); *United States v. Bowers*, No. 18-0292, 2021 WL 4775977, at *3 (W.D. Pa. Oct. 11, 2021) (finding that FBI's collection of data pertaining to the defendant's vehicle from a law enforcement database was not a search under the Fourth Amendment because, *inter alia*, the defendant did not have a reasonable expectation of privacy in his license plate); *see also Ellison* 462 F.3d at 562-63 (rejecting argument that probable cause was needed to run a license plate and finding that running of license plate did not implicate the Fourth Amendment); *King*, 2007 WL 4233585, at *4 (finding that it was not illegal for a police officer to use license plate information to conduct a check on the vehicle's ownership and registration).

Because there was no reasonable expectation of privacy in Gagnon's license plate, there was no constitutionally protected search when Officer Marquez ran the plate, and Officer Marquez did not violate Gagnon's Fourth Amendment rights when doing so.  Accordingly, Gagnon has not pled a plausible violation of his constitutional rights.[4]

### B.    Official Capacity Claims

Gagnon checked the box on the form Complaint to indicate that he intends to present claims against Defendant Marquez in his official capacity as well as individual capacity.  (*See* Compl. at 2.)  "Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell*, 436 U.S. at 690 n.55).  As noted above, to plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights.  *See Monell*, 436 U.S. at 694.  "To satisfy the

---

[4] Further, it is reasonable to infer from Gagnon's allegations that there was a valid warrant for his arrest when his license plate was run by the Defendant.  (*See* Compl at 5 ("I notified my parole agent and she never responded.  We didn't know she dropped a parole warrant.").)

pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict." *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (internal quotation omitted). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). "It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 n.15 (3d Cir. 2013).

To the extent Gagnon seeks damages from Bensalem Township, he has failed to allege facts that support *Monell* liability. Gagnon has not pled a municipal policy or custom with respect to any of the alleged constitutional violations, that any such policy or custom caused the constitutional violation, or any municipal failures amounting to deliberate indifference. Further, even if Gagnon had attempted to plead a basis for *Monell* liability, because there is no underlying constitutional violation, there can be no derivative claim against Bensalem Township. Accordingly, any claims against Bensalem Township will be dismissed.

### C.    Claims Against the Bensalem Police Department

Gagnon appears to present claims against the Bensalem Police Department. Even if Gagnon had alleged a plausible constitutional violation, a claim could not proceed against this Defendant. Following *Monell*, courts concluded that a police department is a sub-unit of the local government and, as such, is merely a vehicle through which the municipality fulfills its policing functions. *See, e.g., Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa.

1993).  Thus, while a municipality may be liable under § 1983, a police department, as a mere

sub-unit of the municipality, may not.  *Id.; Martin v. Red Lion Police Dept.*, 146 F. App'x. 558,

562 n.3 (3d Cir. 2005) (*per curiam*) (stating that police department is not a proper defendant in

an action pursuant to 42 U.S.C. § 1983 because it is a sub-division of its municipality);

*Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) ("As in past cases, we treat the

municipality and its police department as a single entity for purposes of section 1983 liability")

(citing *Colburn v. Upper Darby Township*, 838 F.2d 663, 671 n.7 (3d Cir. 1988)); *Bush v. City of

Philadelphia Philadelphia Police Dep't*, 684 F. Supp. 2d 634, 636 (E.D. Pa. 2010) (same).

Therefore, the Bensalem Police Department is not a proper defendant in this case under § 1983,

and Gagnon's claims against it will be dismissed with prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Gagnon leave to proceed *in forma

pauperis* and dismiss his claims with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for

failure to state a claim.  Gagnon will not be given leave to amend because the Court concludes

that amendment would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110

(3d Cir. 2002).  An appropriate Order follows, dismissing this case.

**BY THE COURT:**

**MARY KAY COSTELLO, J.**

8